IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE B. HELMS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 14-2470 (JMS/KMW) |
| PATROLMAN TIMOTHY RYDER and PATROLMAN KEITH WALL, | **OPINION** |
| Defendants. | |

APPEARANCES:

Thomas McKay, III, Esq.
Leigh Ann Benson, Esq.
COZEN O'CONNOR
Liberty View Building
457 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
    Attorneys for Plaintiff

John Michael Palm, Esq.
LAW OFFICE OF JOHN M. PALM, LLC
High Ridge Commons – Suite 101
200 Haddonfield-Berlin Road
Gibbsboro, NJ 08026

Howard C. Long, Jr., Esq.
WADE LONG WOOD & KENNEDY, P.A.
1250 Chews Landing Road
Laurel Springs, NJ 08021
    Attorneys for Defendants


**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court upon the motion of

Defendants Patrolman Timothy Ryder (hereinafter, "Patrolman

Ryder") and Patrolman Keith Wall (hereinafter "Patrolman

Wall")(collectively, "Defendants") for summary judgment on

Plaintiff Jesse Helms' (hereinafter "Plaintiff") § 1983

excessive force claims against them.  Plaintiff, who was driving

a stolen vehicle and fled the police, was found hiding facedown

under a truck in the neighborhood and was subsequently arrested.

He alleges that after he was handcuffed and submitted to

Defendants' orders, he was punched several times in the side and

the back of his head.  For the reasons that follow, the Court

will deny Defendants' motion for summary judgment.

## II.  BACKGROUND

### A. Factual Background[1]

On November 29, 2013, Patrolman Ryder, while on routine

patrol, completed a registration check of the vehicle being

---

[1] The Court distills this undisputed version of events from the
parties' statements of material facts, affidavits, and exhibits,
and recounts them in the manner most favorable to Plaintiff, as
the party opposing summary judgment.  The Court disregards, as
it must, those portions of the parties' statements of material
facts that lack citation to relevant record evidence (unless
admitted by the opponent), contain improper legal argument or
conclusions, or recite factual irrelevancies. See generally L.
Civ. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d
496, 499 n.2 (D.N.J. 2015) (disregarding portions of the
parties' statements of material facts on these grounds); Jones
v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n.9
(D.N.J. 2015) (same).  Plaintiff argues that Defendants' motion
is procedurally deficient because many of Defendants'
"undisputed facts" are "not set forth is separately numbered
paragraphs," instead including "long-winded narratives brimming
with numerous 'facts,' yet concluding, often times, with a
single citation." (Pl. Br. at 2.)  The Court will accept

driven by Plaintiff, and he learned that the vehicle was reported as a stolen vehicle. (Defendants' Statement of Material Facts ("SMF") at ¶ 12.)  Patrolman Ryder activated his lights and siren but Plaintiff did not stop; instead, he drove through several stop signs until he arrived at a dead end street. (Id.) At that point, Plaintiff exited his vehicle and began to run, despite Patrolman Ryder commanding him to stop and to get on the ground. (Id.)  Patrolman Ryder called for backup, and eventually found Plaintiff hiding underneath a nearby truck. (Id.)

After Plaintiff was found under the vehicle, he was told by Patrolman Ryder to place his hands out or he would be shot. (Id. at ¶ 3.) Patrolman Ryder, Patrolman Wall and a K-9 handler, Officer Kerner pulled him out, handcuffed and arrested him. (Id. at ¶ 12.)  While Defendants were handcuffing Plaintiff as he laid on the ground, they held him down with one of them kneeling on him so that he would not run away. (Id. at ¶ 15.)  Plaintiff

---

Defendants' statement of undisputed material facts as adequate under L. Civ. R. 56.1.  While not technically embracing the rule's requirement of separately-numbered paragraphs including one fact at a time, the submission "meets the principle embodied by the rule – that the parties narrow the key issues so the Court can adjudicate the motion without embarking on a judicial scavenger hunt for relevant facts." Schecter v. Schecter, No. 07-419, 2008 WL 5054343, at *7 (D.N.J. Nov. 26, 2008); see also Smith v. Merline, 797 F. Supp. 2d 488, 499 (D.N.J. 2011)(declining to deny Defendant's summary judgment motion on similar procedural grounds because "Defendants' technical deficiency does not appear to have been in bad faith").  The Court instructs Defendants' counsel to strictly comply with local rules in future cases.

claims that once he was handcuffed, Patrolman Ryder and then Patrolman Wall punched him multiple times in the side and back of his head, while Defendants deny that any punches were thrown.

Plaintiff was photographed that night at the Gloucester City Police Department while being booked, and the booking photograph does not show any bruising or punching marks. (Id. at ¶ 10, 13.) As a result of this incident, Plaintiff has claimed various physical injuries, color flashes, forgetfulness, decline in his right eye vision, and now having to wear eyeglasses. (Id. at ¶ 2.) Plaintiff submitted a medical report from Dr. Scott Sharetts, and he opined that as a result of the event, Plaintiff sustained a "mild/grade 1 concussion without documented loss of consciousness, vomiting, seizure activity, etc." (Id. at ¶ 5; Ex. C. to Def. Br. at 3.) Plaintiff admits that there is nothing today that cannot do that he could do before this incident and that his only limitation after the incident is reading without glasses. (Id. at ¶ 9.)

Defendants' expert Dr. Bernard Kaplan reviewed Plaintiff's extensive medical chart of prior and subsequent medical and eye care records and examined the booking photographs on the date of the incident from the Gloucester City Police and Camden County Jail. (Id. at ¶ 7.) He opined that it was "extraordinary unlikely" that the incident between Plaintiff and Defendants

4

would be responsible for his change in vision and his need for eye glasses. (Ex. E to Def. Br. at 2.)

Plaintiff was charged with numerous offenses including resisting arrest by flight, eluding police, receiving stolen property, trespassing and numerous motor vehicle tickets. (Id. at ¶ 16.) He eventually pled guilty to eluding the police and third degree burglary. (Id. at ¶ 18.)

### B. Procedural history

Plaintiff initially filed his complaint pro se on April 14, 2014, asserting § 1983 excessive force claims against the City of Gloucester, the Chief of Police and Patrolman Ryder. [Docket Item 1.] After the appointment of pro bono counsel, Plaintiff filed his Amended Complaint against only Patrolman Ryder and Patrolman Wall on November 23, 2015. [Docket Item 38.] Count One is a § 1983 violation against Patrolman Ryder, and Count Two is a § 1983 violation against Patrolman Wall. Plaintiff seeks compensatory damages, punitive damages, and reasonable attorney's fees. After fact discovery, Defendants filed their motion for summary judgment. [Docket Item 60.]

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that

a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

Plaintiff claims that the Patrolmen violated his rights under the United States Constitution by using excessive force by repeatedly punching him in the side and back of the head after his arrest.[2] Defendant moved for summary judgment on two grounds: first, that the New Jersey Torts Claim Act ("TCA") bars Plaintiff's claims for non-economic damages, and second, that

---

[2] Plaintiff brings such claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Defendants are entitled to qualified immunity.  The Court

addresses each in turn.

**A.    New Jersey Tort Claims Act**

Defendants first argue that Plaintiff's claimed injuries do

not meet the requirements of the TCA, so all of Plaintiff's non-

economic damages claims must be dismissed. In relevant part, the

TCA provides that:

> No damages shall be awarded against a public entity or
> public employee for pain and suffering resulting from any
> injury; provided however, that this limitation on the
> recovery of damages for pain and suffering shall not apply
> in cases of permanent loss of a bodily function, permanent
> disfigurement or dismemberment where the medical treatment
> expenses are in excess of $3,600.

N.J.S.A. § 59:9-2(d).  Defendants argue that because Plaintiff

has no objective evidence of a permanent injury and cannot meet

the minimum injury threshold, his claims for non-economic

damages claims must be dismissed. (Def. Br. at 4-5.)  On the

other hand, Plaintiff argues that the TCA has no applicability

to Plaintiff's § 1983 claims because the TCA only applies to

common law tort claims. (Pl. Br. at 3.)

The Court agrees with Plaintiff, and denies Defendant's

motion for summary judgment on this ground. Plaintiff's Amended

Complaint only alleges two claims, both under the federal

statute 42 U.S.C. § 1983, and Plaintiff seeks no relief from

Defendants pursuant to the New Jersey Tort Claims Act.

Therefore, any immunities offered under that Act offer no

protection to Defendants here, who are sued exclusively under federal law.  See Tice v. Cramer, 133 N.J. 347, 375 (1993) ("We emphasize only that whatever the immunity conferred by the [New Jersey Tort Claims] Act, public entities and law enforcement personnel should understand that federal liability under section 1983 may exist, even if inconsistent with the Act, and if it does, the Act provides no immunity from the federal claim"); Figueroa v. City of Camden, No. 09-4343, 2012 WL 3756974, at *7 (D.N.J. Aug. 28, 2012)(denying Defendants' summary judgment motion on TCA grounds because Defendants were sued exclusively under federal law).  Moreover, the Supremacy Clause ensures that the TCA will not bar Plaintiff's § 1983 damage claims. See Pruticka v. Posner, 714 F. Supp. 119, 125 (D.N.J. 1989) ("To the extent that § 1983 and the New Jersey Tort Claims Act conflict, the latter must obviously yield to the former under the Supremacy Clause, U.S. Const. art. VI.").  Defendants provide no adequate reason why the TCA should bar Plaintiff's damages claims under § 1983, and all of the cases they cite to involve state law claims, where the TCA bar would apply. See Pascucci v. The Twp. of Irvington, 46 F. App'x 114, 115 (3d Cir. 2002)(claims under "the New Jersey Constitution, the New Jersey Law Against Discrimination, the New Jersey Tort Claims Act, and various other state law claims"); Fine v. City of Margate, 48 F. Supp. 3d 772, 776 (D.N.J. 2014)(negligence action); Johnson v.

<u>City of Pleasantville</u>, No. 05-4258, 2007 WL 1412271 at *1
(D.N.J. May 14, 2007)(common law tort claim for intentional
and/or negligent infliction of emotional distress); <u>Ponte v.
Overeem</u>, 171 N.J. 46 (2002)(medical malpractice action). As a
result, the Court denies Defendants' motion for summary judgment
on TCA grounds.

**B. Qualified Immunity**

Next, Defendants argue that Plaintiff's § 1983 excessive
force claim fails as a matter of law because they are entitled
to qualified immunity. Defendants assert that all evidence
indicates that they acted reasonably under the circumstances and
they must therefore be immune from suit. Reciting a different
version of facts, Plaintiff argues that Defendants are not
entitled to qualified immunity because Defendants' actions in
"deliver[ing] numerous heavy blows to [Plaintiff's head] and
ground[ing] his face into the road during the course of his
arrest," specifically after Plaintiff was contained, handcuffed,
and amendable to arrest, are enough to establish a genuine
dispute of material fact. (Opp'n at 5-6.)

Qualified immunity is an affirmative defense that "shields
government officials from civil damages liability unless the
official violated a statutory or constitutional right that was
clearly established at the time of the challenged conduct."
<u>Taylor v. Barkes</u>, 135 S. Ct. 2042, 2044 (2015) (quoting <u>Reichle</u>

v. Howards, 132 S. Ct. 2088, 2093 (2012)).  Qualified immunity
will not, however, act as a shield for "the official who knows
or should know he is acting outside the law." Noble v. City of
Camden, 112 F. Supp. 3d 208, 225 (D.N.J. 2015)(quoting Butz v.
Economou, 438 U.S. 478, 506-07 (1978)).  To overcome this
immunity, the Court must decide whether the facts alleged, taken
in a light most favorable to the plaintiff, make out (1) a
violation of a constitutional right; and 2) that the right at
issue was "clearly established" at the time of defendant's
alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001).
The Supreme Court no longer requires strict adherence to this
two-step sequence and courts may begin the analysis with either
inquiry. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Lamont
v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011).

At summary judgment, courts are required to view the facts
and draw reasonable inferences in the light most favorable to
the party opposing the motion. United States v. Diebold, Inc.,
369 U.S. 654 (1962) (per curiam); Saucier, 533 U.S. at 201. "In
qualified immunity cases, this usually means adopting . . . the
plaintiff's version of the facts." Scott v. Harris, 550 U.S.
372, 378 (2007).  In other words, the inquiry is the following:
"[t]aken in the light most favorable to the party asserting the
injury, do the facts alleged show the officer's conduct violated

a constitutional right," and was that right clearly established?" <u>Saucier</u>, 533 U.S. at 201.

Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009); <u>see also</u> <u>Curley v. Klem</u>, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis"). The court must deny summary judgment if on the plaintiff's version of the facts, defendants violated the plaintiff's clearly established constitutional rights. <u>Giles</u>, 571 F.3d at 327 (finding that district court was wrong to dismiss Eighth Amendment claims on qualified immunity grounds because there was a factual dispute as to whether plaintiff had ceased resisting when he was kicked by officers, and court "must accept [the plaintiff's] version of the facts").

### 1. Step One

The Fourth Amendment's objective reasonableness standard controls where a police officer allegedly uses excessive force during an arrest. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989). To establish a claim for excessive force as an unreasonable seizure, a plaintiff must show that: (a) a seizure occurred; and (b) that seizure was unreasonable. <u>See</u> <u>Rivas v.</u>

City of Passaic, 365 F.3d 188, 198 (3d Cir. 2004) (citing Curley, 298 F.3d at 279); see also Graham, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).

The objective reasonableness standard in this context "requir[es] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Saucier, 533 U.S. at 205 (citation omitted). Ultimately, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397. In addition to the factors cited above, the Third Circuit has added several other factors to determine whether the force employed was reasonable, including (1) the possibility that the suspect is violent or dangerous; (2) the duration of the police action; (3) whether the police action takes place in the context of effecting an

arrest; (4) the possibility that the suspect may be armed; and (5) the number of persons the officer must contend with at one time. Leibner v. Borough of Red Bank Police Dept., No. 12-4104, 2013 WL 1065927, at *10 (D.N.J. Mar. 12, 2013) (citing Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004)); see also Graham, 490 U.S. at 396; Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Importantly, the Third Circuit rejects the proposition that "the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." Id. (citation omitted).

It is clear that the question of whether a constitutional violation has occurred is an "essentially factual question" properly presented to the jury. Curley, 499 F.3d at 211 (explaining, however, that "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law" for the court); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."); Palmer v. Nassan, 454 F. App'x 123, 125-26 (3d Cir. 2011) ("A claim of excessive force under § 1983 requires 'the jury . . . to determine whether [the officer]

used force that was objectively reasonable under the
circumstances and facts confronting him at that time, without
regard to his underlying motivation") (quoting <u>Mosley v. Wilson</u>,
102 F.3d 85, 95 (3d Cir. 1996)).  This is consistent with the
well-established principle that jurors weigh the evidence in the
record and determine the credibility of witnesses. <u>Frank C.
Pollara Grp., LLC v. Ocean View Inv. Holding, LLC</u>, 784 F.3d 177,
184 (3d Cir. 2015) ("We must refrain from weighing the evidence,
determining the credibility of witnesses, or substituting our
own version of the facts for that of the jury.") (citation and
alterations omitted).  Therefore, it is inappropriate for the
Court to determine Plaintiff's credibility.  The Court must view
his testimony, as well as the other facts in the record, in the
light most favorable to Plaintiff.

Here, Patrolman Ryder stated that once the officers found
Plaintiff hiding underneath the truck, he and Patrolman Wall
"assisted him coming out from under the car and [they] put him
in handcuffs." (Ryder Dep. 30:10-12.)  They held him down with
their hands and knees as Plaintiff was laying in the prone
position, <u>i.e.</u>, on his stomach. (<u>Id.</u> at 35:21-23; 36:7-10.)
Then, because Plaintiff was handcuffed behind his back, the
officers helped him stand up and escorted him to the police car
to be taken to the Gloucester City Police Department. (<u>Id.</u> at
44:5-9.)  Patrolman Ryder denies pushing Plaintiff's face to the

14

ground, punching or hitting him, or making any physical contract
to his head or face at any point during the incident. (Id. at
37:21 to 38:14.)  Patrolman Wall also denies punching Plaintiff,
nor did he see any officer punch Plaintiff or push his face to
the ground. (Wall Dep. at 20:20-23; 21:19-21.)  Then, at the
police station, Patrolman Ryder stated that Plaintiff remarked
to him, "I'm surprised you guys didn't kick my ass." (Ryder Dep.
at 47:10-11.)  Patrolman Wall also stated that Plaintiff
"thank[ed] us for not beating him up." (Wall Dep. at 35:17.)

Plaintiff's version of what happened is markedly different.
Plaintiff states that after he was handcuffed, he "just felt
[Patrolman Ryder] punch me on the [right] side of my head." (Id.
at 58:1-3.)  He explains that as he "was waiting for them to
take me to the cop car . . . [Patrolman Ryder] just hit me on
the side of my face and the back of my head." (Id. at 60:15-24.)
Patrolman Ryder then punched Plaintiff again, this time "a
little bit lower than the first hit," in the back of his head.
(Id. at 62:6-10.)  The punches were "getting harder" and
Patrolman Ryder punched Plaintiff with "his bald fist" for the
third time, "on the other side" of his head, i.e., the left back
side of his head. (Id. at 62:22-24.)  With the fourth and last
punch, Patrolman Ryder hit Plaintiff above the back of his head
near his ear. (Id. at 65:8-10.)  All four times Patrolman Ryder
hit Plaintiff, his face was on the ground. (Id. at 66:20-22.)

All four were "hard punches." (Id. at 67:10.)  Plaintiff,
however, was "never struck directly in the face." (Id. at 83:12-
13.)

Then, after Patrolman Ryder finished, Patrolman Wall "knelt
down" and hit Plaintiff twice "directly in the middle of the
center" of his head. (Id. at 68:12-16.)  Patrolman Wall used his
fist and "[a]ll of his force." (Id. at 70:19-23.)  He then
"grinded" Plaintiff's face into the ground "three of four
times." (Id. at 71:5-8; 90:1-9.)  This resulted in a "little
mark" on Plaintiff's right cheek, but no other signs of physical
injury. (Id. at 88:20-21.)  Patrolman Wall admits that Plaintiff
"started coming out and showing his hands" and did not continue
to run or elude after the K-9 handler commanded him to come out
from under the car. (Wall Dep. at 17:10.) Patrolman Wall admits
that Plaintiff did not resist at all during the handcuffing
process, and that Plaintiff was "fairly agreeable" to what was
going on and not resisting at all. (Id. at 19:17-25.)  Regarding
the incident at the police station, Plaintiff denies ever
telling the officers "I'm surprised you guys didn't beat me" or
"I'm surprised you didn't kick my ass," as he "would never say
anything like that." (Id. at 78:12-23.)

Furthermore, Plaintiff's expert Dr. Scott Sharetts stated
that "[a]s a result of the 11/29/13 event, Mr. Helms sustained a
mild/grade 1 concussion without documented loss of

consciousness, vomiting, seizure activity, etc." (Ex. C. to Def.
Br. at 3.) Plaintiff complains of "constant headaches" that
have gotten worse since the incident, even sometimes turning
"into a migraine," as well as "muscle twitches" in his face.
(Helms Dep. at 103:9-10; 104:12-13.)

Under Plaintiff's facts, in the light most favorable to him
as the party opposing summary judgment, a reasonable factfinder
could find that Defendants' conduct was not "objectively
reasonable," so Plaintiff has satisfied the first prong of the
qualified immunity analysis. The gratuitous use of force
against an arrestee who has already been restrained violates the
Fourth Amendment. See Couden, 446 F.3d at 497 (finding force
excessive as a matter of law where plaintiff was not "resisting
arrest or attempting to flee" at the time force was used);
Niblack v. Murray, No. 12-6910, 2016 WL 4086775, at *3 (D.N.J.
July 29, 2016)("[G]enuine disputes of material fact remain as to
whether Defendants' use of force was objectively reasonable");
Noble v. City of Camden, 112 F. Supp. 3d at 228 (denying summary
judgment where Plaintiff testified that he was "not resisting
arrest during . . . any part of the encounter); Robinson v.
Andrews, No. 11-252, 2014 WL 4662237 at *9 (D.N.J. Sept. 18,
2014) (denying summary judgment where officer kicked plaintiff
after he was already subdued, handcuffed, and unable to pose any
threat to the officer's safety); Weber v. Rodriguez, No. 07-

2097, 2011 WL 2555358, at *5 (D.N.J. June 27, 2011) (explaining that a reasonable juror could conclude that force used against the plaintiff violated the Fourth Amendment when officers hit him on the head with a baton, punched and assaulted him after they handcuffed and subdued him); see also Miller v. Woodhead, No. 08-3092, 2011 WL 817556 at *4 (D.N.J. Mar. 2, 2011)("Plaintiff asserts in his deposition testimony that the Defendants' actions occurred after he was handcuffed and no longer resisting arrest"); id. ("A reasonable fact-finder could conclude that if the Plaintiff was handcuffed he no longer posed a threat of harm or risk of flight."); Barker v. Keezer, No. 08-1487, 2010 WL 2760728, at *3 (D.N.J. July 8, 2010) (finding that repeatedly smashing the head of a restrained arrestee into the pavement constituted excessive force because such conduct "would appear to serve no purpose other than to inflict bodily harm")

Viewed in the light most favorable to Plaintiff, the facts in the record are sufficient to support a finding that Defendants' repeated punching of Plaintiff constituted an unreasonable seizure in violation of his Fourth Amendment rights. Here, the parties do not dispute that it was reasonable for Defendants to use force after Plaintiff evaded their signals to pull over, fled his vehicle, hid under another vehicle in a residential area, and was dragged out from under the vehicle to be handcuffed and arrested. However, there is a genuine dispute

18

of material fact regarding whether Defendants repeatedly punched Plaintiff in the side and back of his head <u>after</u> he was handcuffed, which would be an unreasonable use of force. The contrasting accounts of what happened presents factual issues as to the degree of force actually employed and whether it was reasonable. Therefore, the Court finds that material issues of fact exist as to whether Defendants used excessive force and therefore violated Plaintiff's Fourth Amendment rights.

### 2. Step Two

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Taylor v. Barkes</u>, 135 S. Ct. 2042, 2044 (2015)(quoting <u>Reichle</u>, 132 S. Ct. at 2093)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2085 (2011) (quotation omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> at 2083. A district court "may not deny a summary judgment motion premised on qualified immunity without deciding that the right in question was clearly established at the time of the alleged wrongdoing." <u>Spady v. Bethlehem Area Sch. Dist.</u>, 800 F.3d 633, 637 n. 4 (3d Cir. 2015)(citation omitted).

Here, the Court finds that the second prong has been satisfied. See <u>Saucier</u>, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). At the time Defendants acted in November 2013, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force. See, e.g., <u>Giles</u>, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); <u>Blazek v. City of Iowa City</u>, 761 F.3d 920, 925 (8th Cir. 2014) ("It was clearly established in 2009 that when a person is subdued and restrained with handcuffs, a "gratuitous and completely unnecessary act of violence" is unreasonable and violates the Fourth Amendment."); <u>Morrison v. Bd. of Trustees of Green Twp.</u>, 583 F.3d 394, 404 (6th Cir. 2009) ("This Court has consistently held in light of the reasonableness standard that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.'" (quoting <u>Baker v. City of Hamilton</u>, 471 F.3d 601, 607–08 (6th Cir. 2006)); <u>Jennings v. Jones</u>, 499 F.3d 2, 16–17 (1st Cir. 2007) (holding that reasonable officer should have known that it was unconstitutional to increase the use of physical force after an

arrestee who has been resisting arrest stops resisting and warns

officers that they are hurting him); Figueroa v. City of Camden,

No. 09-4343, 2012 WL 3756974 at *6 (D.N.J. Aug. 28, 2012)("No

reasonable officer would conclude that it is lawful to punch an

arrestee who is offering no resistance and has been restrained

by handcuffs.").

Applying the evidence most favorable to Plaintiff, a

reasonable officer could not have believed that beating an

unarmed man who was not resisting arrest with punches to the

head while his arms were restrained, was lawful.  It would have

been clear to a police officer making an arrest that once

Plaintiff no long posed a risk of harm to the police officers,

the continued beating was excessive and unconstitutional.  The

Court concludes, as explained above, that Defendants are not

entitled to qualified immunity at this stage.[3]

---

[3] Because the question of qualified immunity is ultimately a question for the Court, this conclusion may change based on the facts found by the jury at trial. Curley, 499 F.3d at 214 ("The jury was not bound at trial, and the District Court was not bound post-trial, by our earlier statements involving a hypothetical set of facts favoring Curley, since the facts and inferences actually found by the jury were clearly different than those which we were required to posit in Curley when considering the summary judgment order.").

## V. CONCLUSION

In light of the foregoing, the Court will deny Defendants' motion for summary judgment.


**April 12, 2017**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge